**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
**DARREN CESARIO, on behalf of**
**himself and all others similarly situated,**
**Plaintiff**

CLASS ACTION COMPLAINT AND"
DEMAND FOR JURY TRIAL

DOCKET NO.

**CLUTCH, INC. & CARPE**
**LOTION LLC, d/b/a MyCarpe**

**Defendant**

-------------------------------------------------------------x

Plaintiff **DARREN CESARIO** ("Plaintiff" or "Mr. Cesario,"), individually and on behalf of himself and all others similarly situated (collectively, "Plaintiffs"), by and through his undersigned counsel, brings this action against Defendant, **CLUTCH, INC.** ("Clutch" or "Defendant"), for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq., arising from Defendant's failure to ensure that its ecommerce website, including pages hosted at and through mycarpe.com, is accessible to blind and visually impaired individuals.

## INTRODUCTION

1. Plaintiff Darren Cesario is a resident of Bronx County and is permanently disabled due to legal blindness. Mr. Cesario has been diagnosed with Retinitis Pigmentosa, a progressive hereditary retinal dystrophy that causes markedly reduced peripheral visual fields, impaired night vision, decreased contrast sensitivity, and progressive constriction of his functional visual field. As documented and confirmed by Dr. Eleonora Orloff, O.D., on May 15, 2025, Mr. Cesario's condition meets the federal and New York State criteria for legal blindness, and his visual limitations are permanent and significantly impair his ability to interpret printed or digital information without

assistive technology. Exhibit A

2. Mr. Cesario is a proficient user of screenreading software and keyboard navigation, which he relies upon to access digital environments independently. Because he cannot visually perceive website content without accessible coding, he depends upon websites to provide proper semantic structure, meaningful alternative text, labeled form controls, and screenreader-compatible navigation in order to browse, evaluate, and purchase goods online. For blind consumers such as Mr. Cesario, screenreading software is not optional; it is the means by which independent internet access is possible.

3. Defendant markets and sells specialty antiperspirant and sweat-management products under the Carpe brand directly to consumers through its website, including customizable underarm bundles and scented underarm products. The uploaded WAVE report identifies a page titled "BUILD-YOUR-OWN-BUNDLE" that invites users to choose scents and save up to 30 percent, and that page displays selectable products including Fresh Powder and Lavender Citrus underarm items.

4. Mr. Cesario has a concrete and genuine interest in purchasing Defendant's underarm sweat products, including a build-your-own underarm bundle featuring Fresh Powder and Lavender Citrus options, because such products are personal-care items that are routinely repurchased, must be selected by scent and type, and are especially well-suited to online ordering when a blind consumer can independently review product options, quantities, scent combinations, pricing, shipping terms, and bundle savings. The bundle page itself is designed to let consumers customize scent combinations and add selected products to the cart, making independent access to that page essential to a meaningful purchase decision.

5. Mr. Cesario's interest in Defendant's products is not abstract or manufactured. As a legally blind consumer, he benefits substantially from ecommerce platforms that allow him to

independently purchase recurring household and personal-care products without the need to navigate physical retail locations, depend on third parties to read labels, or rely on store personnel to identify scents and product variants. Defendant's website purports to offer precisely that kind of direct-to-consumer shopping experience, including customizable underarm bundle options and purchase controls.

6. On January 23, 2026, March 14, 2026, and April 29, 2026, Mr. Cesario attempted to access Defendant's website using screenreading technology in order to evaluate and purchase Defendant's underarm sweat products, including a customizable underarm bundle with scent options such as Fresh Powder and Lavender Citrus. His objectives were concrete, personal, and directly tied to a genuine desire to independently browse, compare, select, and purchase Defendant's products for personal use.

7. Despite multiple attempts, Mr. Cesario was unable to independently complete these tasks because Defendant's website contained pervasive accessibility barriers. The uploaded WAVE audit for Defendant's Build-Your-Own Underarm Bundle page reports 102 accessibility errors, including 26 missing alternative text errors, 1 linked image missing alternative text error, and 73 empty button errors, with an AIM score of 2 out of 10. Exhibit B

8. These barriers prevented Mr. Cesario from independently understanding product choices, identifying scent selections, distinguishing interactive controls, and completing a purchase. Defendant's failure to design, construct, maintain, and operate its highly interactive commercial website in a manner compatible with screenreading technology denied Mr. Cesario equal access to the goods and services it provides to nondisabled customers.

9. Plaintiff brings this civil action against Defendant for violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq., and related state and local laws. Plaintiff seeks injunctive relief requiring Defendant to adopt and implement policies, practices, and

procedures to ensure that its website becomes and remains accessible to blind and visually impaired individuals. Plaintiff remains genuinely interested in purchasing Defendant's products and intends to return to the website as soon as it is remediated so that he may independently browse, evaluate, customize, and purchase the underarm products he desires.

**JURISDICTION & VENUE**

10. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States, including Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq., which prohibits discrimination by places of public accommodation, including those operating commercial websites.

11. This Court has supplemental jurisdiction over Plaintiff's related state and city law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiff's federal ADA claims. All claims arise from a common nucleus of operative fact: Defendant's operation of an inaccessible website that denies blind consumers equal access to its goods and services.

12. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b)(2) because Plaintiff resides in this District, accessed Defendant's website from within this District, and personally experienced the discriminatory barriers alleged herein while attempting to evaluate and purchase Defendant's products.

13. Defendant is subject to personal jurisdiction in this District because it purposefully avails itself of the privilege of conducting business in New York through its highly interactive commercial website, through which consumers can browse products, customize bundles, add items to a cart, and complete purchases online.

14. Courts routinely support venue placement in the district where the plaintiff attempted and failed to access the public accommodation. See, *Chloe NA v. Queen Bee of Beverly Hills, LLC.*,

616 F.3d 158 (2d Cir. 2010); *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018); *Andrews v. Blick Art Materials, LLC.*, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); see also *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017 (2021). In *Access Now, Inc. v. Otter Products, LLC*, 280 F. Supp. 3d 287 (D. Mass. 2017), Judge Patti B. Saris held that "although the website may have been created and operated outside of the district, the attempts to access the website in Massachusetts are part of the sequence of events underlying the claim." Id. at 294. This satisfies Due Process because the harm—the barred access—occurred within the forum. Id. at 293. Here, Plaintiff's attempts to access Defendant's websites from New York County, establish venue in this District.

15. Similarly, in *Access Now, Inc. v. Sportswear, Inc.,* No. 17-cv-11211-NMG, 2018 U.S. Dist. LEXIS 47318 (D. Mass. Mar. 22, 2018), the court held that a defendant "availed itself of the forum state's economic activities by targeting the residents of the Commonwealth … Such targeting evinces a voluntary attempt to appeal to the customer base in the forum." Id. at *11. Defendants here have availed themselves of New York's economic activities by intentionally marketing and selling their products to New York consumers through their Websites, which are designed to serve a nationwide customer base, including residents of this District.

16. This Court is empowered to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

15. Plaintiff Darren Cesario is, and at all relevant times was, a resident of Bronx County, New York. Mr. Cesario is legally blind and a member of the protected class of individuals under the Americans with Disabilities Act, 42 U.S.C. § 12102(1)-(2), its implementing regulations, and the protections afforded under New York State and New York City law. As confirmed by his treating eye doctor, Mr. Cesario suffers from advanced Retinitis Pigmentosa, a permanent and

incurable condition that severely restricts his functional visual field and requires the use of assistive technology to access digital content independently.

16. Defendant Clutch, Inc. is a business entity that owns, operates, leases, or controls the commercial website through which it markets and sells sweat-management and personal-care products, including customizable underarm bundles and related items, to consumers throughout the United States, including residents of New York.

17. At all relevant times, Defendant was responsible for designing, constructing, maintaining, and operating its website in a manner that complies with federal, state, and local disability-rights laws. Defendant failed to do so, resulting in the denial of full and equal access to Plaintiff and other blind and visually impaired consumers.

18. Mr. Cesario is a proficient user of screenreading technology and relies on accessible coding, keyboard navigation, semantic structure, and properly labeled controls to browse, understand, and interact with websites. When websites lack meaningful alternative text, contain empty buttons, or fail to provide programmatically determinable interactive elements, blind users such as Mr. Cesario are denied the ability to browse, evaluate, and purchase goods independently.

## STATEMENT OF FACTS

19. Plaintiff Darren Cesario is a legally blind consumer who relies on screenreading software and keyboard navigation to access digital content. Because he cannot visually interpret printed or digital information without assistive technology, he depends on businesses to design and maintain their websites in a manner that is compatible with screenreading technology.

20. Mr. Cesario suffers from Retinitis Pigmentosa, a chronic, incurable, and progressive retinal disorder. His most recent examination demonstrated a severely constricted visual field consistent with advanced Retinitis Pigmentosa, and his providers advised continued use of low-vision aids and screen-reading software.

21. Defendant markets its website as an ecommerce platform through which consumers can shop for sweat-management products and customize underarm bundles. The WAVE report for the Build-Your-Own Underarm Bundle page reflects prominent promotional content, scent-selection options, multiple "ADD TO CART" controls, and a savings offer tied to the customization process.

22. Mr. Cesario desired to purchase Defendant's underarm products for personal use, specifically a build-your-own underarm bundle including Fresh Powder and Lavender Citrus options. Those products appealed to him for practical and consumer-specific reasons: they are everyday hygiene products, they are offered in multiple scent variants that a blind consumer must be able to distinguish independently, and the bundle page appeared to offer cost savings and product customization that are material to a purchase decision.

23. Mr. Cesario also desired to use Defendant's website because online shopping affords blind consumers a meaningful degree of independence that is often unavailable in brick-and-mortar personal-care shopping. By using an accessible website, Mr. Cesario would be able to privately assess scent offerings, compare bundle options, review pricing and promotions, and reorder products in the future without requiring assistance from friends, family members, or store employees.

24. On January 23, 2026, Mr. Cesario attempted to access Defendant's Build-Your-Own Underarm Bundle page using screenreading software in order to understand the available bundle configuration, review scent options, and determine which underarm products were included in the promotion. However, because the page contained missing alternative text and numerous empty buttons, he was unable to determine the identity and function of many interactive elements and could not independently understand the full selection process.

25. On March 14, 2026, Mr. Cesario again attempted to access Defendant's website to

select Fresh Powder and Lavender Citrus options and add them to his cart. The WAVE audit reflects 73 empty button errors and additional missing alternative text errors on that page, barriers that would cause screenreading software to announce controls without meaningful labels or fail to convey the content of product images and linked elements. As a result, Mr. Cesario could not reliably identify which scent option he was selecting or whether he was activating the correct purchase control.

26. On April 29, 2026, Mr. Cesario made a further attempt to access the same bundle page to complete a purchase and confirm pricing, shipping, and bundle savings. The same accessibility barriers persisted, including missing alternative text and empty buttons, preventing him from independently navigating the page, verifying selected items, and completing checkout-related actions.

27. The barriers Mr. Cesario encountered were not isolated or trivial. The uploaded WAVE report documents 102 errors on the Build-Your-Own Underarm Bundle page, including 26 missing alternative text errors, 1 linked image missing alternative text error, and 73 empty button errors, along with numerous contrast errors and alerts. Those barriers are precisely the kinds of issues that interfere with a blind consumer's ability to perceive content, identify controls, and interact with a commercial website through screenreading software. Exhibit B

28. The uploaded SortSite materials further indicate accessibility and site-quality issues associated with Defendant's website, corroborating the existence of website defects rather than a one-off user problem. Even where the extracted text from those reports is limited, the reports themselves support that the site was subjected to accessibility, broken-link, and site-quality testing in connection with the same domain. Exhibit C

29. As a result of these barriers, Mr. Cesario was denied the full and equal enjoyment of Defendant's website and was unable to purchase the products he sought. His injury is concrete and ongoing because Defendant continues to operate a website that prevents him from independently

accessing product information and purchase functionality made available to sighted users.

30. Mr. Cesario remains highly interested in purchasing Defendant's underarm products and intends to return to the website as soon as it is made accessible. Because personal-care products such as deodorant and antiperspirant are recurring-use items, his desire to purchase from Defendant is ongoing rather than hypothetical. He is currently deterred from returning solely because of the accessibility barriers he encountered and the knowledge that the site remains inaccessible.

## NATURE OF ACTION

31. The internet is an essential tool for modern life and a primary means by which consumers shop for everyday goods. For blind and visually impaired individuals, equal access to websites is not a convenience; it is a civil right. When digital retail platforms are not designed to be compatible with screenreading technology, blind users are excluded from the online marketplace and denied independence and equal participation.

32. Blind and visually impaired individuals access websites using screenreading software, which converts digital content into synthesized speech or refreshable Braille. For this technology to function, website content must be capable of being rendered into text through proper labels, semantic coding, and accessible structure. When websites contain missing alternative text, empty buttons, unlabeled controls, or other coding defects, blind users cannot navigate, understand, or interact with the website.

33. Defendant owns and operates a commercial website through which it markets and sells personal-care and sweat-management products to the general public. Defendant's business model depends on consumers being able to access product descriptions, customize bundle selections, add desired products to a cart, and complete purchases online.

34. Plaintiff attempted to access Defendant's website on multiple occasions to evaluate and purchase specific underarm products that he genuinely desired for personal use. Those

objectives were concrete, personal, and time-relevant, and Plaintiff intends to return once the website is remediated.

35. However, due to pervasive accessibility barriers, Plaintiff was unable to independently review product content, reliably identify scent options, distinguish interactive purchase controls, confirm his selections, or complete a transaction. Defendant's failure to design, construct, maintain, and operate its website in a manner compatible with screenreading technology constitutes discrimination under Title III of the ADA and related state and local laws.

## CLASS ACTION ALLEGATIONS

36. Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. Plaintiff seeks certification of a nationwide class consisting of all legally blind individuals in the United States who have attempted to access Defendant's website and, as a result of Defendant's failure to design, construct, and maintain the website in an accessible manner, were denied equal access to the goods, services, and information offered thereon.

37. Plaintiff also seeks certification of a New York subclass consisting of all legally blind individuals residing in the State of New York who have attempted to access Defendant's website and were denied equal access to the goods, services, and information offered thereon.

38. The members of the Class and Subclass are so numerous that joinder of all members is impracticable. The precise number of Class members is unknown to Plaintiff but is believed to be in the thousands, given the prevalence of blindness and visual impairment in the United States and the widespread use of commercial ecommerce websites by consumers seeking to purchase personal-care goods online.

39. Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual members. These common questions

include, but are not limited to, whether Defendant's website contains barriers that prevent blind and visually impaired individuals from accessing its content using screenreading software, whether Defendant's failure to make its website accessible violates Title III of the ADA and related state and local laws, whether Defendant has adopted adequate policies and practices to ensure ongoing website accessibility, and whether injunctive relief is warranted

40. Plaintiff's claims are typical of the claims of the members of the Class and Subclass because Plaintiff, like all Class members, is legally blind, attempted to access Defendant's website using screenreading software, and was denied equal access due to the same or similar accessibility barriers. Plaintiff seeks the same injunctive relief on behalf of all members.

41. Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass. Plaintiff has no interests that are antagonistic to the interests of the Class or Subclass and is committed to vigorously prosecuting this action. Plaintiff has retained counsel experienced in disability-rights litigation, class actions, and federal civil-rights enforcement.

42. Defendant has acted or refused to act on grounds generally applicable to the Class and Subclass, making final injunctive relief appropriate with respect to the Class as a whole. Defendant continues to operate an inaccessible website without adequate accessibility measures, thereby subjecting blind and visually impaired individuals to the same discriminatory barriers.

**FIRST CAUSE OF ACTION**
**Violation of Title III of the Americans with Disabilities Act**
**42 U.S.C. § 12181 et seq.**

43. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

44. Defendant owns, operates, leases, or controls the commercial website through which it sells goods to the general public. As such, Defendant is a public accommodation within the meaning of Title III of the ADA.

45. Title III of the ADA prohibits discrimination on the basis of disability in the full and

equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation.

46. Defendant has violated Title III by failing to design, construct, maintain, and operate its website in a manner that is fully accessible to and independently usable by blind and visually impaired individuals. Defendant's website contains numerous barriers that prevent blind users from accessing essential content and functionality, including missing alternative text and empty buttons on a core product-customization page.

47. These barriers deny blind consumers equal access to Defendant's goods and services, including the ability to review product descriptions, identify scent options, customize bundles, add items to a cart, and complete purchases.

48. Defendant's conduct constitutes discrimination under 42 U.S.C. § 12182(b)(2)(A)(ii) because it has failed to make reasonable modifications in policies, practices, or procedures necessary to afford equal access to individuals with disabilities.

49. Defendant's conduct also violates 42 U.S.C. § 12182(b)(2)(A)(iii) because it has failed to take those steps necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently because of the absence of auxiliary aids and services.

50. Defendant's ongoing failure to make its website accessible constitutes a continuing violation of the ADA. Plaintiff seeks injunctive relief requiring Defendant to take all steps necessary to bring its website into full compliance with the ADA and to adopt policies to ensure ongoing accessibility.

## SECOND CAUSE OF ACTION
**Violation of the New York State Human Rights Law**
**N.Y. Exec. Law § 290 et seq.**

51. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

[file:2]

52. The New York State Human Rights Law prohibits discrimination on the basis of disability in places of public accommodation.

53. Defendant's website is a sales and service platform that constitutes a place of public accommodation under the NYSHRL.

54. Defendant has violated the NYSHRL by denying Plaintiff and other blind consumers equal access to its goods and services due to the presence of pervasive accessibility barriers on its website.

55. Defendant's conduct constitutes unlawful discrimination because it subjects blind individuals to inferior access, unequal treatment, and exclusion from the digital marketplace.

**THIRD CAUSE OF ACTION**
**Violation of the New York City Human Rights Law**
**N.Y.C. Admin. Code § 8-101 et seq.**

56. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

57. The New York City Human Rights Law provides broad and independent protections against discrimination on the basis of disability.

58. Defendant's website is a sales and service platform that constitutes a place of public accommodation under the NYCHRL.

59. Defendant has violated the NYCHRL by denying Plaintiff and other blind consumers equal access to its goods and services due to the presence of accessibility barriers that prevent blind users from navigating, understanding, and interacting with the website.

60. The NYCHRL requires public accommodations to provide equal access and prohibits practices that result in unequal treatment or disparate impact on individuals with disabilities. Defendant's conduct violates the NYCHRL because it denies blind consumers the ability to independently browse, evaluate, customize, and purchase Defendant's products.

**FOURTH CAUSE OF ACTION**
**Violation of the New York Civil Rights Law**
**N.Y. Civ. Rights Law §§ 40-41**

61. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

62. The New York Civil Rights Law guarantees all persons, regardless of disability, the full and equal enjoyment of places of public accommodation.

63. By operating an inaccessible website that denies blind consumers equal access to its goods and services, Defendant has violated Plaintiff's rights under N.Y. Civ. Rights Law §§ 40 and 41.

64. Defendant's conduct constitutes a denial of equal access and equal enjoyment of its digital services. Plaintiff is entitled to injunctive relief and statutory damages as provided by law.

**FIFTH CAUSE OF ACTION**
**Declaratory Judgment**
**28 U.S.C. §§ 2201-2202**

65. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

66. An actual controversy exists between the parties regarding Defendant's ongoing operation of an inaccessible website and its obligations under federal, state, and local disability-rights laws.

67. Plaintiff seeks a declaration that Defendant's website, in its current form, violates Title III of the ADA, the NYSHRL, the NYCHRL, and the New York Civil Rights Law.

68. Plaintiff further seeks a declaration that Defendant must bring its website into compliance with WCAG 2.1 AA or an equivalent standard and must adopt policies to ensure ongoing accessibility.

69. Declaratory relief is necessary to resolve the legal rights and obligations of the parties and to prevent future violations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A preliminary and permanent injunction prohibiting Defendant from violating Title III of the ADA, 42 U.S.C. § 12182 et seq.

A preliminary and permanent injunction requiring Defendant to take all steps necessary to make its website fully accessible to and usable by blind and visually impaired individuals, including through adoption and maintenance of WCAG-conforming accessibility measures.

A declaration that Defendant owns, maintains, controls, and/or operates its website in a manner that discriminates against blind individuals and fails to provide equal access as required by law.

An order certifying the proposed Class and New York Subclass under Fed. R. Civ. P. 23, appointing Plaintiff as Class Representative, and appointing his counsel as Class Counsel.

An award of costs, litigation expenses, and reasonable attorneys' fees to the fullest extent permitted by law.

Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
May 7, 2026

JOSEPH & NORINSBERG LLC
Attorneys for Plaintiff
By: */s/ Robert L. Schonfeld*
ROBERT L. SCHONFELD
825 Third Avenue
New York, New York 10022
(212)227-5700
rschonfeld@employeejustice.com